# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52344-2-II |
| Respondent, | |
| v. | |
| RACHEL C. RAWLEY, | ORDER GRANTING MOTION TO PUBLISH AND PUBLISHING OPINION |
| Appellant. | |

Respondent, State of Washington, filed a motion to publish this court's opinion filed on March 23, 2020.  After consideration, the court grants the motion.  It is now

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted.  It is further

**ORDERED** that the opinion will now be published.

**FOR THE COURT**

**PANEL**: Jj. Worswick, Lee, Cruser

Lee, C.J.

We concur:

Worswick, J.

Cruser, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52344-2-II |
| Respondent, | |
| v. | |
| RACHEL CINDA RAWLEY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Rachel C. Rawley appeals from the denial of her CrR 3.6 suppression motion and the resulting felony driving under the influence conviction following a head-on collision.  Rawley argues that the trial court erred when it denied her suppression motion because exigent circumstances did not exist to justify the warrantless blood draw done at the scene of the accident.  We affirm.

## FACTS[1]

At 2:55 PM, Kitsap County Sheriff's Office Deputy Andrew Aman responded to a two-car, head-on collision.  Rawley had crossed the center line, causing her vehicle to collide with another vehicle.  Rawley was trapped in her vehicle.  As Deputy Aman spoke to Rawley, he noted a strong smell of alcohol and that her speech was slurred and repetitive.  Rawley admitted to drinking alcohol.

---

[1]  The following facts rely in part on the trial court's CrR 3.6 findings of fact, which are, with the exception of finding of fact XV, unchallenged and, therefore, are verities on appeal.  *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

During this time, paramedics were working to stabilize Rawley and get her out of the car. Deputy Aman contacted one of the paramedics, who told him that they would be "transporting [Rawley], because obviously she's been involved in a very, very serious collision." Verbatim Report of Proceedings (VRP) (July 16, 2018) at 26. The paramedic told Deputy Aman that he "believed he was going to start an IV [intravenous fluids] on [Rawley], but he would know more once he got her in the back of the medic unit." VRP (July 16, 2018) at 26. Deputy Aman was aware that if an IV is going to be administered, "generally there's concern about internal injuries." VRP (July 16, 2018) at 28.

The paramedics freed Rawley from the vehicle and placed her in the ambulance. Deputy Aman went to the ambulance and learned that IV fluids and medications were about to be administered to Rawley. Deputy Aman did not ask the paramedics what IV fluids or medications they would be administering to Rawley. Deputy Aman stated that it is possible that a different substance could affect the blood differently, but he is "not a medical expert." VRP (July 16, 2018) at 37.

In Deputy Aman's experience, the shortest time it had taken him to obtain a telephonic search warrant to draw blood was "[m]aybe 20 minutes." VRP (July 16, 2018) at 31. Also, the longest time it had taken him to obtain a telephonic search warrant to draw blood was "about 45 minutes to an hour." VRP (July 16, 2018) at 31. Furthermore, when requesting a warrant during the day "attorneys and judges tend to be busy, and sometimes they're available really quick. Sometimes they're not." VRP (July 16, 2018) at 39.

Deputy Aman felt exigent circumstances existed to draw Rawley's blood to check her blood alcohol content (BAC) before administering IV fluids. The paramedic drew Rawley's blood

at 3:07 PM. IV fluids started at 3:23 PM. The ambulance left for the hospital at 3:23 PM. Rawley's BAC was .35—over 4 times the legal limit under RCW 46.61.502(1)(a).

The State charged Rawley with felony driving under the influence.[2] Pretrial, Rawley made a CrR 3.6 motion to suppress the results of the blood draw. The trial court denied her motion, entering findings of fact and conclusions of law.

The trial court found in finding of fact XV that, "[O]n average, it can take up to 45 minutes to obtain a telephonic blood draw warrant." Clerk's Papers (CP) at 123. The trial court then concluded in conclusions of law III and IV that, "[T]he warrantless blood draw was lawful under [the] exigent circumstances based on *State v. Inman*, 2 Wn. App. 2d 281, 409 P.3d 1138, *review denied*, 190 Wn.2d 1022 (2018)" and "no legal authority requires [Deputy Aman] to inquire what IV fluids or medications paramedics would introduce in [Rawley]." CP at 124.

Following a stipulated facts bench trial, the trial court found Rawley guilty of felony driving under the influence. Rawley appeals.

ANALYSIS

Rawley argues that the trial court erred in denying her CrR 3.6 motion to suppress the BAC test results because exigent circumstances did not exist to justify a warrantless blood draw. She challenges finding of fact XV and conclusions of law III and IV. We disagree.

---

[2] The State also charged Rawley with second degree driving while license suspended or revoked, operation of a motor vehicle without ignition interlock device, and reckless driving. Rawley pleaded guilty to the second degree driving while license suspended or revoked and operation of a motor vehicle without ignition interlock device charges and, upon a stipulated facts trial, the trial court found Rawley guilty of the reckless driving charge. These convictions are not the subject of this appeal.

A.    STANDARD OF REVIEW

We review a trial court's decision on a CrR 3.6 motion to suppress to determine whether the court's findings of fact are supported by substantial evidence and whether those findings support the conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). We review conclusions of law de novo. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Similarly, whether exigent circumstances exist is a legal question we review de novo. *Inman*, 2 Wn. App. 2d at 290.

B.    LEGAL PRINCIPLES

Warrantless searches and seizures are per se unreasonable and in violation of the Fourth Amendment and article I, section 7 of the Washington State Constitution. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). A recognized exception to the warrant requirement allows a warrantless search or seizure when exigent circumstances exist. *Missouri v. McNeely*, 569 U.S. 141, 148-49, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013). The State has the burden of showing exigent circumstances by clear and convincing evidence. *Inman*, 2 Wn. App. 2d at 290.

A court examines the totality of the circumstances to determine whether they exist. *McNeely*, 569 U.S. at 149. Exigent circumstances exist where "the delay necessary to obtain a warrant is not practical because the delay would permit the destruction of evidence." *State v. Baird*, 187 Wn.2d 210, 218, 386 P.3d 239 (2016).

A blood test is a search and seizure. *State v. Curran*, 116 Wn.2d 174, 184, 804 P.2d 558 (1991). But the natural dissipation of alcohol in the blood may support a finding of exigency in a

specific case, for example, when delay results from the warrant application process. *McNeely*, 569 U.S. at 156.

C.     FINDING OF FACT XV

Rawley first challenges the trial court's finding that "on average, it can take up to 45 minutes to obtain a telephonic blood draw warrant." CP at 123.

Here, the accident happened at 2:55 PM. Deputy Aman testified that on average it took between 20 minutes and an hour to get a telephonic search warrant. He further testified that sometimes it took longer during the day because of the unavailability of the attorneys and judges. This testimony is evidence sufficient to persuade a fair-minded, rational person that on average, it can take up to 45 minutes to obtain a telephonic blood draw warrant. Therefore, substantial evidence supports the trial court's finding of fact XV.

D.     CONCLUSIONS OF LAW III AND IV

Rawley next challenges the trial court's conclusions that "the warrantless blood draw was lawful under [the] exigent circumstances based on *State v. Inman*, 2 [Wn. App.].2d 281, 409 P.3d 1138 (2018)" and "no legal authority requires [Deputy Aman] to inquire what IV fluids or medications paramedics would introduce in [Rawley]." CP at 124.

1.     Conclusion of Law III—Exigent Circumstances

In *State v. Inman*, Inman crashed his motorcycle on a rural road, injuring him and his passenger. 2 Wn. App. 2d at 284. "Inman had facial trauma, including bleeding and abrasions on the face, and a deformed helmet." *Id.* A paramedic administered emergency treatment. *Id.* A responding officer spoke with Inman and smelled intoxicants on him. *Id.* Inman admitted that he had been drinking before driving his motorcycle. *Id.* Responders at the scene conducted a warrantless blood draw. *Id.* at 285. The State charged Inman with vehicular assault. *Id.* Inman

asked the trial court to suppress evidence of the blood draw, which the court declined to do, finding exigent circumstances existed. *Id.* at 285-86. We affirmed, holding that the totality of the circumstances supported the existence of exigent circumstances. *Id.* at 291. We considered that Inman received emergency medical services and treatment for possible spine injuries, helicopters were coming to medevac him to the nearest trauma center at the time of the blood draw, it would have taken at least 45 minutes to prepare and obtain a warrant, and obtaining a warrant by telephone was questionable because the responding officer lacked reliable cell phone coverage in the rural area. *Id.* at 291-92. We held, "[u]nder the circumstances, obtaining a warrant was not practical" because of delay and because Inman's continued medical treatment could have impacted the integrity of the blood sample. *Id.* at 292.

The circumstances here are like those in *Inman*. Rawley was in a head-on collision and was trapped inside her vehicle. Her speech was slurred and Deputy Aman could smell intoxicants on her breath. Rawley admitted to drinking. One of the paramedics told Deputy Aman he would be administering IV fluids and then taking Rawley to the hospital. Deputy Aman was aware that IV fluids are generally administered if there is concern for internal injuries. In Deputy Aman's experience, a warrant request could take on average up to 45 minutes during the day. The *Inman* case is similar to the present case and was properly relied upon by the trial court. Accordingly, the trial court's findings of fact support the trial court's conclusion of law that exigent circumstances justified the warrantless blood draw based on *Inman*.

2.      Conclusion of Law IV—Inquiry into Type of Fluids or Medications

Rawley argues that the State bears the burden of showing that the IV fluids would alter the blood test results in order to prove exigent circumstances to justify a warrantless blood draw. Rawley did not cite legal authority for this argument below. On appeal, she cites to a medical

journal and an unpublished case neither of which provide binding legal authority that a police officer must inquire into the type of IV fluid being administered in order to show that exigent circumstance existed because the IV fluids would alter the blood test results.

When defense counsel asked why he did not ask about the IV, Deputy Aman responded that he was "not a medical expert." VRP (July 16, 2018) at 37. There is no binding legal authority requiring police officers to be knowledgeable of medicines and their effect on blood alcohol content. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.") We decline to establish such requirement here.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

, A.C.J.

Lee, A.C.J.

We concur:

Worswick, J.

Cruser, J.